And the first is number 19-2271, Ramos-Ramirez v. Berwick-Borough et al., Mr. Parkins and McMain, whenever you're ready. Good morning. May it please the Court, my name is Kurt Parkins and I represent the appellant in this matter, Edwin Ramos. I respectfully request five minutes of rebuttal time. That's fine. The sole issue in this appeal is whether appellant's section 1983 excessive force claim was barred by the doctrine articulated by the Supreme Court in Heck v. Humphrey. And as the Third Circuit has interpreted that case law, specifically in the Garrison case, which we've cited in the brief, in order for Heck to bar the 1983 claim for excessive force, the excessive force claim must necessarily invalidate the underlying criminal conviction. Let's assume you're right for the moment. The Heck does not necessarily bar this case because it doesn't affect, if you were to win, either the conviction or the sentence. But don't you still lose? You have to show that what? That this wasn't an assault? What did he plead to? What did Mr. Ramos-Ramirez plead to? The plea, and I would cite to the record at Appendix 444, the guilty plea in this matter and the factual basis for the plea were to an attempted simple assault. So I would agree with Your Honor if the underlying conviction was the actual act of committing a simple assault, which has an element of causing bodily injury. I think Your Honor would be absolutely correct. However, and I think that really is the most important single fact in this case, is that the underlying guilty plea was to an attempt to cause bodily injury. And in so doing, according to the plea statement, and this is language from his attorney, Mr. Ramos was coming down from the porch. Certainly, Mr. Ramos on this scene said he had a knife and it appears he was going into Mr. Melendez's direction. So he got off the porch and essentially chased Mr. Melendez. Isn't that sufficient to sustain the conviction? Except the plea, which would be a conviction. Well, I think it is sufficient to sustain the underlying conviction. I think our position is that the underlying conviction is compatible or reconcilable with the theory of the liability in the 1983 matter, specifically. Are they compatible? They're compatible. And the underlying matter, the attempt, under the Pennsylvania statute and case law, as we've cited, one, impossibility is not a defense to attempt. So you can be guilty of attempt even if the end result of causing bodily injury is impossible. And furthermore, it does not require that the bodily injury that's intended to be caused be imminent. It only requires that a substantial step be taken. And that's where the two matters are compatible. In the 1983 excessive force claim, in order for the deadly force to be justified, the injury or the threat to Mr. Melendez must have been imminent. And our theory of liability in the 1983 case is that it was not. If you were Melendez, weren't you awfully afraid? I mean, he's running away. Somebody's got a knife who's coming after him, and this person ignores not one but two statements to halt, to stop. And he doesn't do it. Well, I think there were some factual issues with the commands to stop in that as to whether or not he heard it and whether or not he was aware that it was the police that were- I thought he did say he heard it. He just later said that he thought maybe he didn't know from whom that was coming. He did not know that it was the police or was unaware that the police were there. Although he knew the police were there, correct? They had showed up on the scene. Correct. They had showed up. And he said before the judge that he came down off the porch. Did he not? And that's correct, Your Honor, but the fact of the matter is- Mr. Melendez, a person that was being pursued. Yes. Brittany Cope, the woman with whom he lived. Yes. Officer Rafferty, the person that fired the gun. All three said that Ramirez, Ramos Ramirez, was chasing Melendez. And the officer ordered him to stop on two or three different occasions because an assault was imminent. Couldn't we conclude from the witness's testimony and from his plea that an assault was imminent? I don't believe you can conclude that, Your Honor. I believe that's a fact issue for the jury. And the reason being is specifically where you see the witnesses place Melendez in relation to Mr. Ramos. Both Ms. Cope and Chief Strish, who was on scene at the time of the shooting. So both one of the officers and one of the witnesses that were on scene place. If you look at the pictures we've attached to Appendix 437 and 435, where they've marked Mr. Melendez is very far away from where Mr. Ramos is. And the testimony of Ms. Cope is that he was actually over in a completely different yard at the time that Mr. Ramos is shot. So the key here and the key factual dispute is that Officer Rafferty, his position was that they were close and the attack was imminent. Not only that, he told them to stop several times. I did not. I understand that. And but the fact of the matter is you have his version of events and then you have Cope's version of events, which is they're nowhere near one another. He wasn't in at that time able to cause injury to Mr. Melendez based on where they were at. You have Chief Strish who places Melendez completely out of reach of Mr. Ramos and you have Mr. Ramos's testimony. So even if you accept the underlying plea, which obviously you're going to have to, if you accept the underlying plea, if he was chasing him, but Melendez was so far away that the attack, it was impossible at that period of time for him to cause injury or at that period of time the injury was not imminent. Based on your version, you think you have a right to proceed against Officer Rafferty? I'm sorry? Based on your version, you want to proceed with your claim against Officer Rafferty? Correct. Which you're seeking? Yes. And I think really because there's a different version of events from Rafferty, from Cope, from Strish, and potentially from Mr. Ramos. I didn't think there was. There's a difference of interpretation of the events. I thought they all said that there was a chase. And Ramos Ramirez was chasing Melendez. Correct. However, if... Now, Ramos Ramirez said he remained on the porch. Is that part of the record in this case? He was stating that he was on the porch, on the steps of the porch, coming down the porch, and that's where the shooting occurred. That's corroborated by the blood. Is that what he said during the sentencing call, colloquially? In the... I don't... I believe, Your Honor, that that, though, would create... That's really a fact issue. The only issue before the court is whether the conviction, the actual guilty plea and the elements of the offense of attempted simple assault bar the 1983 claim. Differences between his testimony at the time of sentencing or testimony in this case... As I said, that only gets you so far. So, okay, you can now present the 1983 claim, but the question is, can you win on the 1983 claim? And even if you possibly could win on the 1983 claim, is there qualified immunity? So you've got two additional hurdles to get over, which are going to be very difficult. And I understand that, Your Honor, but the question before the court today is limited to whether it is barred by heck. Those determinations would have to, I believe, be made by the lower court if this case is remanded. But our position on those issues, Your Honor, is that... Why is that? Why is that the case, that if you win on heck, it's only... We can only... We have to stop there and not get to anything else. Why not, for example, say that there's judicial estoppel? Things he said at the sentencing colloquy when he pled guilty are very different from what's being argued on appeal. Well, that, Your Honor, I don't believe was the rationale for the lower court's decision, and I don't believe that's a question for appeal. But whether or not what he said is... What were the questions that you noted in your brief were up before us? What were the issues that you... Just whether or not heck bars the incident in 1983 action. All right, we'll get you back over there. May it please the court. Counsel, my name is David McMain, and I represent Officer Reagan Rafferty. The issue that's before the court is actually threefold. The threshold issue is whether or not a criminal defendant who had his guilty plea colloquially under oath, and again it is sentencing under oath, admits to certain critical facts, all of which justify as a matter of law the use of deadly force by an officer, whether he can disavow that and tell a completely different story in a contrary theory in the subsequent civil case. Under heck versus Humphrey, he cannot. He is bound by it. Additionally, the court can entertain two additional questions and find the right result for different reasons, which we briefed in our brief. Number one, that even if it's not barred by heck versus Humphrey, and I believe it clearly is, and I'm... How is it clear? Well, because here is... Excuse me. This is what Mr. Ramos-Ramirez admitted to at his guilty plea colloquially. This is appendix page 444. That he did attempt to cause bodily injury to the victim, used a deadly weapon, namely a knife, and he chased him with said knife. That was what he pled guilty to, and then at the sentencing again... Would you say that the force used was excessive for the circumstances? Did you really have to... There were several police officers at the scene. Did the officer really have to fire Sean to bring him down? There was one... Wasn't that excessive? No. The officer... A single officer arrived first. Two other officers arrived as the shot was being fired. That would be Strish and Gauger. The only reason, getting to the question of that criminal attempt, the only reason the attempt was not successful was because the officer saved Mr. Melendez's life with a single shot. So that's why it was only an attempt instead of the completion. Based on this predicate facts, Heck v. Humphrey and cases from this court and other courts of appeal say that Mr. Ramirez is bound by it. There were really two cases I think that we discussed in our brief, both sides. The one was the garrison case that was before this court in 2010. That case not only was non-precedential, but it was specifically very different than the facts here. In the garrison case, this court specifically pointed out that there was no underlying record of specifically what the facts were that led to the guilty plea. In this case, we know what the facts are. Mr. Ramirez admitted those three items that I spoke about. He then further in the sentencing again reiterated, and specifically on page supplemental appendix 70, which is the sentencing colloquy, the court went back through it again, the predicate facts. On page 70 in particular, the prosecutor recounts the facts upon which the guilty colloquy was based. And in the final paragraph says, and when the officer directed both men to drop their weapons, Melendez dropped the wood. So he dropped his weapon, and Mr. Ramirez did not drop his knife, which is what necessitated the officer to shoot him and bring him down and stop the immediate threat. So this has all been established in the underlying case. I think not only Heck says that you can't disavow and tell a completely different story, I think it would be called perjury. I was shocked at the deposition when Mr. Ramirez said, yeah, I said all those things. Yes, I was under oath. Yes, they is what I agreed to, but I didn't really mean it. How do you distinguish on the Heck issue, the Nelson versus Cesare case from 1997, which we held that a conviction for resisting arrest does not necessarily imply the invalidity of a 1983 excessive? Right. So I think I'm sorry. The distinction with Nelson is that there was a use of force and it continued. So the argument was why it wasn't barred was that there may have been some force justified, but it went on and it was too extended and too excessive. Here we have a single shot. It might be more similar in this case to Nelson if the officer fired a single shot and then continued to fire after the threat had passed. Putting it in the vernacular, doesn't it really come down to whether the assault relating to Melendez is a separate issue or a separate thing from the excessive force relating to the police officer and Ramos Ramirez? So if you are, you could be, at least in Nelson, you could have an excessive force claim, but not necessarily is that so intertwined with the other matter that the allowing the excessive force claim would necessarily invalidate either the conviction or the sentence. I don't see how this conviction or sentence is affected one way or the other here. Well, it's affected because the theory and the argument and the claim that's being espoused in the civil case, and Judge Brand talked about this as an opinion, directly conflicts with the facts that were established and he stuck with. Suppose I pled the same facts that he pled to in the criminal conviction, and his story in the civil complaint is simply I admit everything that I did.  I simply think that the force that was used here was excessive. It's not permitted to go forward under Hackett's project. First of all, I think Hackett versus Humphrey bars it for the reasons I've argued. But secondarily, I think part of the benefit of Hackett is the facts that he agreed to in his plea, which he's bound by under Hackett, or judicial estoppel. Judge Ambrose had mentioned the concept of judicial estoppel, and there's actually a couple of cases that Your Honor has written on which we did not cite. And I thought the question was, was the force used excessive? No, and that's what I'm... Did he have to pull the trigger and shoot him? I think it's constitutionally permissible. He could have not pulled the trigger and maybe Mr. Melendez would have been stabbed and killed, but he's justified and he's constitutionally permitted to use deadly force in response to the threat to the life of another, namely a knife. And we cite in the underlying summary judgment motion in our brief here that the court can find, Hackett versus Humphrey we're comfortable with, but we're not going to find on those grounds. Rather, we can find as a matter of law based on the facts which have been admitted and have not been contested in the underlying criminal matter. So the answer is yeah, absolutely. Officers are permitted to use deadly force, a single shot, in response to a deadly threat to another. But it wouldn't be barred by Hackett, right? I understand what you're saying. No, it wouldn't be barred by... I'm not suggesting you should concede that there was or wasn't deadly force. Let's just assume he says everything that happened in the criminal proceeding I stand behind and it's allegations 1 through 20 in my plate. And then he says, but I believe under Pennsylvania law and under federal law this is... No, I think as a matter of law the use of deadly force under this scenario is justified. That's the Scranton versus Williams case. We cited other cases in the underlying summary judgment brief that officers were permitted to use deadly force in this scenario. So I think for the secondary reason you could find that Hackett versus Humphrey doesn't apply. However, as a matter of law, the use of force was not a constitutional violation. The officers... Isn't that the stronger argument for your position? I think it's equally strong to the first. I also think qualified immunity is a third ground that could be applied. Under qualified immunity, as the court knows, the plaintiff has to point to a case law that says an officer is not permitted to use this force under this circumstance. There's no such case that says an officer faced with someone about to be stabbed and having warned somebody to drop the deadly weapon... Twice. Twice is not permitted to use deadly force. So I think any one of the three alternate grounds summary judges should be granted. Judge Brand stopped at Hackett versus Humphrey. I think that's the correct basis, but I think... Your opposing counsel says that, okay, if he wins on Hackett it has to be remanded, but your argument is you can affirm on anything in the record. Is that correct? That's correct. Any basis, you can find the same result for differing reasons. And we argue the other two reasons in our brief. There was no opposition in a reply brief that those grounds weren't equally applicable or you could not hold summary judgment in favor of Officer Rafferty on that basis. You cited in a 28-J letter the O'Brien versus Town of Bellingham case, but isn't that different from this case? Ramos-Ramirez was convicted of attempting to assault Melendez. This is not a self-defense claim. This is not Rafferty's self-defense claim, is it? No, but I think the officers are permitted to use deadly force either in defense of themselves or in defense of another. You write different theory, but it's really the same legal basis. And I think the O'Brien case, the reason I think it's particularly applicable, and I submitted it was they held on all three grounds that we're arguing, Heck versus Humphrey, barred the claim, that there was no violation regardless. All you're really saying with respect to O'Brien is that by analogy, it somewhat supports your position. I think it more than somewhat. I think it absolutely supports it off the ground. I mean, the officer wasn't saying that he was acting in self-defense for himself. No, in our case, no, he was defending the life of Mr. Melendez. So you're right, factual distinction, defense of himself versus defense of another, but the legal justification is equally applicable. There was a contention that even if the appellant was chasing the victim, that he was too far away to present an imminent or immediate threat. Is that the case? Well, that's the argument. But I think that the plea and the specific charge refutes that. It's the theory. If you look at the transcript at one point during the sentencing, Mr. Ramos-Ramirez tries to backpedal a little bit on some of the facts and tries to argue that he was on the porch. Well, that's not what the plea said, and that's not what the facts were established in the underlying criminal case. Do you have any assessment of the distance between Melendez or Menendez and Ramos at the time that the officer fired his weapon? The officer had them very close. Chief Stresch, who counsel referred to, said that they were chasing. They did a button hook in the front yard, and they were close. In fact, his testimony, very specifically in the record, appendix 275 in the pages that followed, said that Ramirez had the knife up over his head, was chasing and was going to stab him when the shot was fired. The only person that's given a difference, well, two people have given a difference in distance. Ms. Cope had them very close when she was interviewed that day by the state police. By very close, any assessment of distance? Within 20 feet, I think, is the furthest that anybody has testified to, and Chief Stresch testified to this concept in law enforcement of the 21-foot rule. The 21-foot rule is someone who's holding a knife or a deadly weapon can strike the person if they're within 21 feet before the reaction time of the officer on a holster and fire his weapons. That's kind of the guide that officers are given. But it was very close, and I submit that all the testimony, except for Mr. Ramirez's second version of events at his deposition, Ms. Cope's given a different version every time she's been questioned, and unfortunately, because of the sad situation of domestic violence, people tend to change their stories later, have had Ramirez very close to Melendez when the shot was fired, and his life was in danger. So unless there's any other questions, I really think for all three grounds, the Heck versus Humphrey, I think this is squarely on all fours. Even if you don't find or you have some question, I think as a matter of law, the use of deadly force was constitutionally permissible, and finally, qualified immunity would protect the officer at the third stage. So unless the court has any other questions, I thank you very much. Mr. Parkins. Mr. McMahon's position. When you have the, you did brief Heck, and that was the only issue, but then the other side puts in three other issues, and you don't reply to them, and we can affirm on anything in the record, can we not? I believe, Judge, since it wasn't even addressed by the lower court, that the appropriate... But does it really need to be? I mean, if the answer's pretty easy, why be inefficient sending it back to the court if we don't believe, and I'm just speaking only for myself, if we don't believe that necessarily this is an excessive force claim, and even if it conceivably could be, it's not so well established that there isn't qualified immunity for Officer Rafferty, and by ultimately to the borough. I understand that position, but I think, I don't think the answer's that easy, and I think the fact issues in regard to distance, specifically would go to the qualified immunity issue and go to the excessive force issue, because you have a dispute as to what the distance is. Did Mr. Ramos-Ramirez stay during the plea colloquy that he came down off the porch? Not in the plea colloquy, in the sentencing, I believe he does, Judge. Okay, the sentencing, excuse me. The issue as to whether he's on or off the porch I think is really irrelevant. The question, the salient question is where is he in relation to Mr. Melendez, and at that time was the threat imminent? Because we know the attempt statute in Pennsylvania does not require the harm to be imminent, but for the 1983 claim for him to have justifiable excessive force, it must be imminent. But you heard Mr. McMahon argue that it was imminent, very close. I mean, what was the officer supposed to do under those circumstances? You have one person chasing another with a knife, and they're within about 20 feet. What do you think would have been the appropriate response by the police at that point? First of all, I don't believe that the number within 20 feet is set. One of the witnesses puts them all the way in another yard far away. The person is chasing another, and he's holding a knife, and the officer is saying, stop, stop, stop. And the person with the knife does not. What is an officer to do? There's other uses of force that he would be able to attempt before shooting, especially if the harm is not imminent. Taser, going after the attacker himself. Your Honor hit the nail on the head when you asked Mr. McMahon, couldn't he have used less force? And the fact of the matter is, that's a jury question, is could he have used less force? Is the force that he used reasonable given the circumstances? Couldn't you have bled it that way? Going back to the earlier colloquy, couldn't you have bled this to simply stipulate or not touch any of the facts that were part of the criminal conviction and simply rest your case on the idea of the excessiveness of the force used by the officer? But instead, you seem to have made the choice to plead factual allegations that are inconsistent with the sentence, and doesn't that bring you within the ambit of hack? I don't believe so. It would have to be the – I don't believe the issue is whether the discussion on the record of sentencing conflicts with the record created in this case. It's whether the actual conviction, the elements of the offense of attempted simple assault, conflict with the excessive force in the 1983 claim. According to Mr. McMahon, any time you have somebody that admits to chasing someone with a knife, they're never going to have an excessive force plan if they're shot, under his view. Right? But that completely neglects and fails to look at any other surrounding circumstances, and that's why these cases are a totality of the circumstances analysis for the jury to look at. The fact of the matter is, if I admit to chasing someone with a knife and attempting to harm them, but I'm standing here and somebody is a floor down, 100 feet away from me, and I'm going after them, it's not reasonable for an officer to shoot me. So the question as to distance is appropriately left to the jury. I can argue the harm wasn't imminent. Attorney McMahon can argue it was. The fact of the matter is, neither we nor the court are the judges of whether or not it was imminent. That's left for a jury, and a jury should have been able to determine, based on everyone's account of where each of them were, whether or not it was imminent and whether the force was justified. Thank you very much. Thank you to both counsel for being with us, and we'll take the matter under advisement.